## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| FAIR VIEW SERVICE STATION, INC., derivatively for the benefit of and on behalf of Nominal Defendant DORAL FINANCIAL CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>GLEN R. WAKEMAN, DENNIS G. BUCHERT, JAMES E. GILLERAN, DOUGLAS L. JACOBS, DAVID E. KING, and GERARD L. SMITH,<br><br>Defendants,<br><br>and<br><br>DORAL FINANCIAL CORPORATION, a Puerto Rico Corporation,<br><br>Nominal Defendant. | Civil Action No.: 3:14-cv-01326-SEC<br><br>**MOTION TO DISMISS CONSOLIDATED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**<br><br><u>ORAL ARGUMENT REQUESTED</u> |
| ROBERT CORWIN, derivatively for the benefit of and on behalf of Nominal Defendant DORAL FINANCIAL CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>GLEN R. WAKEMAN, DENNIS G. BUCHERT, JAMES E. GILLERAN, DOUGLAS L. JACOBS, DAVID E. KING, and GERARD L. SMITH,<br><br>Defendants,<br><br>and<br><br>DORAL FINANCIAL CORPORATION, a Puerto Rico Corporation,<br><br>Nominal Defendant. | Civil Action No.: 3:14-cv-01555-SEC |

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................1

ARGUMENT ......................................................................................................6

I.    THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 23.1 FOR FAILURE TO ADEQUATELY ALLEGE DEMAND FUTILITY ....................................6

    A.    The Demand Requirement ........................................................................6

    B.    The *Rales* Test Governs The Demand Futility Analysis ........................................7

    C.    The Complaint Fails To Plead Particularized Facts Showing Interest Or A Lack Of Independence Under *Rales* ....................................9

        1.    Plaintiffs Do Not Allege That A Majority Of The Company's Board Is Interested .............................................................9

            a.    Whistleblower Complaint ..........................................................12

            b.    Confidential Witness Allegations ..............................................13

            c.    Board Responsibilities ..............................................................14

            d.    Audit Committee Membership ..................................................15

            e.    Doral Bank Board Membership ..................................................16

            f.    Written Agreement/Consent Order ..............................................16

            g.    Issuance of Allegedly False Financial Statements.........................17

        2.    Plaintiffs Do Not Allege That A Majority Of The Company's Board Lacks Independence ......................................................19

II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ............................................................................20

    A.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty ..............................21

    B.    There Is No Independent Cause of Action for Gross Mismanagement ................22

    C.    Plaintiffs Fail To State A Claim For Contribution ..................................................22

III.    IN THE ALTERNATIVE, THIS ACTION SHOULD BE STAYED PENDING RESOLUTION OF THE SECURITIES ACTION ..........................................................23

CONCLUSION....................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984) ................................................................7, 10

*Risberg ex rel. Aspen Tech., Inc. v. McArdle*,
529 F. Supp. 2d 213 (D. Mass. 2008) ...................................................6

*In re Baxter Int'l, Inc. S'holders Litig.*,
654 A.2d 1268 (Del. 1995) ................................................................10

*Berrios-Romero v. Estado Libre Asociado de Puerto Rico*,
641 F.3d 24 (1st Cir. 2011) ..............................................................4, 5

*Boateng v. InterAmerican Univ., Inc.*,
210 F.3d 56 (1st Cir. 2000) ................................................................10

*Brautigam v. Blankfein*,
8 F. Supp. 3d 395, 404 (S.D.N.Y. 2014) ...............................................8

*Brenner v. Albrecht*,
2012 WL 252286 (Del. Ch. Jan. 27, 2012) ......................24, 25, 26, 27

*Brudno v. Wise*,
2003 WL 1874750 (Del. Ch. Apr. 1, 2003) .........................................26

*Bryceland v. Minogue*,
2013 WL 3208613 (D. Mass. June 21, 2013), *aff'd*, 557 F. App'x 1 (1st Cir.
2014) ................................................................................................19

*Bryceland v. Minogue*,
557 F. App'x 1 (1st Cir. 2014) ..............................................................7

*In re Caremark Int'l Inc. Deriv. Litig.*,
698 A.2d 959 (Del. Ch. 1996) ..............................................10, 11, 15

*Caviness v. Evans*,
229 F.R.D. 354 (D. Mass. 2005) ...........................................11, 15, 19

*In re China Auto. Sys. Inc. Deriv. Litig.*,
2013 WL 4672059 (Del. Ch. Aug. 30, 2013) .....................10, 12, 14, 15

*In re Citigroup Inc. S'holder Deriv. Litig.*,
964 A.2d 106 (Del. Ch. 2009) ................................................. *passim*

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Coca-Cola Enters., Inc. Deriv. Litig.*,
   478 F. Supp. 2d 1369 (N.D. Ga. 2007) ........................................................15

*In Re: Corinthian Colleges, Inc. S'holder Deriv. Litig.*,
   2012 U.S. Dist. LEXIS 188623 (C.D. Cal. Jan. 30, 2012) ............................13, 14

*Cucci v. Edwards*,
   2007 WL 3396234 (C.D. Cal. Oct. 31, 2007) ...............................................24

*David Shaev Profit Sharing Account v. Riggio*,
   2014 WL 3350235 (N.Y. Sup. Ct. July 3, 2014) ...................................8, 11, 12, 20

*Diaz v. Carrion*,
   2010 WL 4118075 (D.P.R. Oct. 13, 2010) .....................................................3, 23

*In re Dow Chem. Co. Serivative Litig.*,
   2010 WL 66769 (Del. Ch. Jan. 11, 2010) ......................................................18

*Efron v. Embassy Suites (Puerto Rico), Inc.*,
   47 F. Supp. 2d 200 (D.P.R. 1999), *aff'd*, 223 F.3d 12 (1st Cir. 2000) ...................20

*In re First Bancorp Deriv. Litig.*,
   465 F. Supp. 2d 112 (D.P.R. 2006) ....................................................... *passim*

*In re First Solar Deriv. Litig.*,
   2012 WL 6570914 (D. Ariz. Dec. 17, 2012) ...............................................25, 26, 27

*Fromer v. Yogel*,
   50 F. Supp. 2d 227 (S.D.N.Y. 1999).............................................................23

*Garcia v. Carrion*,
   2010 WL 3662593 (D.P.R. Aug. 11, 2010) ...................................................7, 22

*Gonzalez Turul v. Rogatol Distribs. Inc.*,
   951 F.2d 1 (1st Cir. 1991) ...................................................................2, 7, 20

*Greenfield v. Tele–Commc'ns*,
   1989 WL 48738 (Del. Ch. May 10, 1989) ....................................................18

*Grimes v. Donald*,
   673 A.2d 1207 (Del. 1996) ......................................................................6

*Grossman v. Johnson*,
   674 F.2d 115 (1st Cir. 1982) ...................................................................10

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Groupon Deriv. Litig.*,
  882 F. Supp. 2d 1043 (N.D. Ill. 2012) ........................................................................24, 25, 27

*Guttman v. Huang*,
  823 A.2d 492 (Del. Ch. 2003)........................................................................................8, 17

*Hallal v. Vicis Capital Master Fund Ltd.*,
  2013 WL 1192384 (D. Mass. Feb. 25, 2013) ....................................................................21

*In re HQ Sustainable Mar. Indus., Inc., Deriv. Litig.*,
  826 F. Supp. 2d 1256 (W.D. Wash. 2011)....................................................................26, 27

*Ji v. Van Heyningen*,
  2006 WL 2521440 (D.R.I. Aug. 29, 2006)........................................................................18

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90 (1991)........................................................................................................2, 6

*In re Kauffman Mut. Fund Actions*,
  479 F.2d 257 (1st Cir. 1973) ..............................................................................................6

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)..........................................................................................................23

*Levine v. Smith*,
  591 A.2d 194 (Del. 1991) ....................................................................................................7

*Lipsky v. Commonwealth United Corp.*,
  551 F.2d 887 (2d Cir. 1976)..............................................................................................12

*Loveman v. Lauder*,
  484 F. Supp. 2d 259 (S.D.N.Y. 2007)................................................................................18

*In re The Ltd. Inc. S'holder Litig.*,
  2002 WL 537692 (Del. Ch. Mar. 27, 2002)........................................................................19

*Lyondell Chem. Co. v. Ryan*,
  970 A.2d 235 (Del. 2009) ..................................................................................................16

*Malpiede v. Townson*,
  780 A.2d 1075 (Del. 2001) ................................................................................................22

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,
  833 A.2d 961 (Del. Ch. 2003)..................................................................................9, 13, 19

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Marvin H. Maurras Revocable Trust v. Bronfman*,
  2013 WL 5348357 (N.D. Ill. Sept. 24, 2013) ...................................................17, 22

*Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*,
  385 F.3d 72 (1st Cir. 2004) ........................................................................23

*Monisoff v. Am. Eagle Invests., Inc.*,
  955 F. Supp. 40 (S.D.N.Y. 1997) ................................................................23

*Montini v. Lawler*,
  2014 WL 1271696 (D. Mass. Mar. 26, 2014) ..........................................7, 12, 14

*N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*,
  567 F.3d 8 (1st Cir. 2009) .........................................................................21

*In re Ormat Techs., Inc. Deriv. Litig.*,
  2011 WL 3841089 (D. Nev. Aug. 29, 2011) ...............................................25, 27

*Pall v. KPMG, LLP*,
  2006 WL 2800064 (D. Conn. Sept. 29, 2006) ........................................3, 22, 23

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
  632 F.3d 762 (1st Cir. 2011) ......................................................................20

*Rales v. Blasband*,
  634 A.2d 927 (Del. Sup. 1993) .............................................................7, 8, 9, 20

*Rosenblum v. Sharer*,
  2008 U.S. Dist. LEXIS 65353 (C.D. Cal. July 28, 2008) ....................................26

*Ross v. Bernhard*,
  396 U.S. 531 (1970)....................................................................................6

*RSM Prod. Corp. v. Friedman*,
  643 F. Supp. 2d 382 (S.D.N.Y. 2009)..............................................................12

*In re Sagent Tech., Inc., Deriv. Litig.*,
  278 F. Supp. 2d 1079 (N.D. Cal. 2003) ...........................................................19

*Saginaw Police & Fire Pension Fund v. Hewlett-Packard Co.*,
  2012 WL 967063 (N.D. Cal. Mar. 21, 2012)......................................................16

*In re SAIC Deriv. Litig.*,
  948 F. Supp. 2d 366 (S.D.N.Y. 2013)................................................................8

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Seminaris v. Landa*,
    662 A.2d 1350 (Del. Ch. 1995)................................................................2, 10, 17

*In re Sonus Networks, Inc. S'holder Deriv. Litig.*,
    499 F.3d 47 (1st Cir. 2007)...........................................................................9

*South v. Baker*,
    62 A.3d 1 (Del. Ch. 2012)......................................................................11, 15

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006)......................................................................7, 11, 21

*In re Textron*,
    811 F. Supp. 2d 564 (D.R.I. 2011)..............................................................6, 7

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004)..........................................................................27

*United States v. One Rural Lot Identified as FINCA No. 5991 Located in Barrio
    Pueblo, Puerto Rico*,
    726 F. Supp. 2d 61 (D.P.R. 2010)................................................................23

*Stiegele ex rel Viisage Tech., Inc. v. Bailey*,
    2007 WL 4197496 (D. Mass. Aug. 23, 2006) ................................................14

*VNB Realty, Inc. v. Bank of Am. Corp.*,
    2013 WL 5179197 (S.D.N.Y. Sept. 16, 2013)................................................13

*Wood v. Baum*,
    953 A.2d 136 (Del. 2008) ..........................................................................10

**Statutes**

Sarbanes Oxley Act of 2002 ..........................................................................12

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................................................................................1, 3, 21, 28

Fed. R. Civ. P. 12(b)(6)...............................................................................1, 20, 28

Fed. R. Civ. P. 23.1 ...................................................................................... *passim*

**TO THE HONORABLE COURT:**

Nominal Defendant Doral Financial Corporation ("DFC" or the "Company") and the

Individual Defendants respectfully submit this memorandum of law in support of their motion to

dismiss the Consolidated Verified Shareholder Derivative Complaint, dated December 8, 2014

(the "Complaint"), filed by Plaintiffs Fair View Service Station, Inc. and Robert Corwin

("Plaintiffs") on behalf of the Company, pursuant to Federal Rules of Civil Procedure 9(b),

12(b)(6) and 23.1, or alternatively, to stay this action pending resolution of *In re Doral Financial*

*Corp. Sec. Litig.* (3:14-CV-01393 (GAG)) (the "Securities Action").[1]

## INTRODUCTION

The crux of Plaintiffs' claims against the Individual Defendants — current and former

members of DFC's Board of Directors (the "Board") — is that they allegedly breached their

fiduciary duties to the Company by failing to adequately oversee the Company's affairs, which

supposedly led to a failure of internal accounting controls, which in turn allegedly led to the

Company filing inaccurate financial reports with the United States Securities and Exchange

Commission (the "SEC"), which are also the subject of a related putative consolidated securities

class action against DFC and certain of its officers and directors currently pending before Judge

Gustavo Gelpi in this District (the Securities Action).

---

[1]    Citations to "¶" are to the Complaint (Dkt. No. 42). Citations to "Ex." are to the exhibits attached hereto. The
Company, which is incorporated under the laws of the Commonwealth of Puerto Rico, provides banking services
through a wholly owned subsidiary, Doral Bank. ¶ 24. It is named solely as a "Nominal Defendant;" no claims are
asserted against it. The "Individual Defendants" are current and former members of DFC's board of directors:
Dennis G. Buchert, James E. Gilleran, Douglas L. Jacobs, David E. King, Gerard L. Smith, and Glen R. Wakeman
(together, the "Board"). The Complaint incorrectly states that Mr. King is currently a director of DFC. ¶ 29. Mr.
King was a director from July 2007 to June 10, 2014 but no longer sits on the Company's Board. *Id.*; Ex. 1, June
13, 2014 Form 8-K. The rest of the Individual Defendants are current directors of DFC. ¶¶ 25-30. As the
Complaint acknowledges, five of the Individual Defendants are, or were, outside non-management directors:
Messrs. Buchert, Gilleran, Jacobs, King, and Smith (the "Outside Directors"). *Id.*

However, these claims are not asserted directly on Plaintiffs' behalf.  Rather, this action is a purported shareholder derivative action — Plaintiffs seek to assert claims **belonging to the Company, on behalf of the Company**.  That is, any recovery would belong to DFC, not Plaintiffs or any other shareholders.  Because the law generally presumes that only a company's board of directors can commence litigation on a corporation's behalf, before Plaintiffs can usurp that function they must establish that they have standing to pursue claims on DFC's behalf.  In order to do so, they **must** either ask the Board to bring suit (*i.e.*, make a litigation demand) or show that such a demand is excused because it would have been futile (*i.e.*, demonstrate demand futility).

Where, as here, Plaintiffs did not make the requisite demand, Rule 23.1 requires Plaintiffs to provide particularized factual allegations establishing that such a demand would have been futile.[2]  The Complaint does not contain any such particularized facts.  Instead, Plaintiffs allege, in essence, that demand on the Board would be futile because the Board cannot be expected to sue itself.  This assertion, however, appears in virtually every derivative complaint and has been soundly rejected as a "discredited refrain" that cannot establish demand futility.  *See, e.g.*, *Seminaris v. Landa*, 662 A.2d 1350, 1355 (Del. Ch. 1995); *In re First Bancorp Deriv. Litig.*, 465 F. Supp. 2d 112, 118 (D.P.R. 2006).  Rather, Plaintiffs must allege, with particularity, facts showing "director conduct that is so egregious on its face that… [there is] a **substantial likelihood of direct liability**" against the Board.  *Seminaris*, 662 A.2d at 1355 (emphasis added).  Plaintiffs do not come close to meeting this stringent requirement.  *See infra* Sec. I.C.

---

[2]   The question of whether demand futility has been shown is governed by the law of the corporation's state of incorporation.  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-109 (1991).  Here that is Puerto Rico.  ¶ 24. Courts applying Puerto Rico law in the demand futility context look to Delaware law because Puerto Rico law does not "specifically elaborate the requirements of demand or when it is excused" and because "Puerto Rican corporate law was modeled after Delaware law." *Gonzalez Turul v. Rogatol Distribs. Inc.*, 951 F.2d 1, 3 n.4 (1st Cir. 1991); *see also First Bancorp*, 465 F. Supp. 2d at 118.

Strict enforcement of the demand requirement is particularly appropriate here, given the weakness of Plaintiffs' substantive claims, which fail to state a cause of action under Rules 9(b) and 12(b)(6).  In particular:

- The Complaint is devoid of any concrete factual allegations suggesting "the sustained and systematic" failure of oversight necessary to state a claim for failure of oversight.  *See infra* at 10-18, 20-22.

- With respect to Plaintiffs' bare conclusion that the Individual Defendants allowed the Company to issue knowingly false SEC filings and financial statements, the Complaint does not allege any facts — let alone the particularized facts required by Rule 9(b) — indicating that any of the Individual Defendants were aware that the challenged financial reports contained any purported misstatements at the time they were issued.  *See infra* at 17-18.

- Plaintiffs' cause of action for "gross mismanagement" cannot stand for the simple reason that no such independent cause of action exists under Puerto Rico (or, for that matter, Delaware) law.  *See infra* Sec. II.B.

- Plaintiffs' contribution claim — which asserts that **if** the Company is held disproportionately liable in the Securities Action, the Individual Defendants should be required to bear DFC's damages — is both premature (since no liability has been assessed against DFC) and improperly brought against the majority of the Individual Defendants, who are not named as defendants in the Securities Action and are not alleged to have participated in any purported securities fraud.  *See infra* Sec. II.C.

The paucity of Plaintiffs' allegations confirms that dismissal of the Complaint is the proper course of action here.  Indeed, the contribution claim is the primary basis for subject matter jurisdiction alleged by Plaintiffs — to the extent that claim is dismissed, there is likely no basis for this action to proceed in this Court.[3]

---

[3]    *See, e.g., Pall v. KPMG, LLP*, 2006 WL 2800064, at *3 (D. Conn. Sept. 29, 2006) (declining to exercise supplemental jurisdiction over breach of fiduciary duty claims after dismissal of federal securities law contribution claim); *Diaz v. Carrion*, 2010 WL 4118075, at *3 (D.P.R. Oct. 13, 2010) (no federal question jurisdiction over breach of fiduciary duty claims that touch on federal securities issues).

However, if the Court decides not to dismiss the Complaint at this juncture, this action should be temporarily stayed in favor of the Securities Action, which arises from the same nucleus of operative facts as Plaintiffs' claims. The Securities Action asserts claims under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, against the Company and several of its current and former officers and employees (including Mr. Wakeman), on behalf of a putative class of purchasers of DFC's common stock from April 2, 2012 to May 1, 2014. *See* Sec. Compl. ¶¶ 1, 20-27.[4] In particular, the Securities Action asserts that the Company's SEC filings (and accompanying statements) were misleading because they contained two categories of alleged misrepresentations:

   i.  **The Tax Receivable Claims**. Pursuant to a March 26, 2012 closing agreement (the "2012 Closing Agreement") with the Company, Puerto Rico's Treasury Department (the "Treasury Department"), agreed to provide DFC and its subsidiaries with a payable of $229,884,087 resulting from past tax payments (the "Tax Receivable"). *Id.* ¶¶ 122, 125. However, in April 2014, the Treasury Department took the position — for the first time — that the 2012 Closing Agreement was void and that DFC was not entitled to the Tax Receivable. Although DFC promptly disclosed this fact on May 1, 2014, the Securities Action asserts that the possibility of the Tax Receivable being challenged by the Treasury Department should have been disclosed previously. *Id.* ¶ 7.[5]

  ii.  **The ALLL Claims**. On March 18, 2014, the Company announced that it had discovered a material weakness in its internal controls and also restated certain financial information relating to its allowance for loan and lease losses ("ALLL") for the third quarter of 2013. ¶¶ 8, 100-02. The Securities Action asserts that the Company deliberately

---

[4]   Citations to "Sec. Compl." are to the complaint in the Securities Action, which is attached hereto as Exhibit 2.

[5]   On June 5, 2014, the Company commenced litigation against the Treasury Department in Puerto Rico's Court of First Instance, requesting a declaratory judgment that the 2012 Closing Agreement and the Tax Receivable are valid. The Court of First Instance issued its decision on October 10, 2014, in which it emphatically rejected the Treasury Department's attempt to void the Tax Receivable and held that the 2012 Closing Agreement is "final and conclusive and cannot be reopened, annulled set aside or disregarded in litigation in terms of the matters agreed upon," that "[DFC] did not make false representations to the Department of the Treasury when executing the 2012 Closing Agreement," and that the Company is fully entitled to the benefits of the Tax Receivable. *See* Ex. 3, Court of First Instance Decision at 29, 46; *Berrios-Romero v. Estado Libre Asociado de Puerto Rico*, 641 F.3d 24, 27 (1st Cir. 2011) ("A decision of a sister court is a proper matter of judicial notice").

understated its ALLL, and that problems with DFC's internal controls and their impact on the Company's ALLL estimates were not properly disclosed prior to March 18, 2014. *See* Sec. Compl. ¶¶ 4-6, 8. This is alleged to have been in violation of agreements between DFC and its regulators. *Id.* ¶¶ 79-80.[6]

Plaintiffs' claims in this action closely mirror the allegations at issue in the Securities Action. Plaintiffs contend that the Individual Defendants breached their fiduciary duties to DFC by allowing the "issuance of false and misleading financial reports and financial statements filed with the SEC;" failing to properly oversee the Company's internal controls and its ALLL estimates; and allowing the Company to violate the Consent Order and the Written Agreement. ¶¶ 1, 154-61. Plaintiffs also claim that, **_if_** the Company is found liable in the Securities Action, then the Individual Defendants should be held liable to the Company — in **_this_** action — for contribution, pursuant to Sections §§ 10(b) and 21(D) of the Exchange Act. ¶¶ 168-72. That is, Plaintiffs' contribution claim is expressly contingent on the outcome of the Securities Action — it cannot be fully resolved until there is an ultimate decision in the Securities Action.

Therefore, a stay of this action is appropriate, pending the final resolution of the Securities Action. Such a stay is also necessary to prevent the obvious prejudice to the Company if it is required to defend the Securities Action while Plaintiffs are simultaneously prosecuting similar claims on the Company's behalf. As courts faced with similar circumstances — *i.e.*, the pendency of related derivative and securities class actions — have repeatedly found, a stay would simplify the relevant issues, streamline future proceedings in this litigation, and reduce the burden of litigation on the parties and on this Court. *See infra* Sec. III.

---

[6]   Like most financial institutions based in Puerto Rico, the economic recession has taken its toll on the Company, which has been operating under the terms of (i) an August 12, 2012 consent order (the "Consent Order") between Doral Bank and the FDIC; and (ii) a September 11, 2012 written agreement (the "Written Agreement") with the Federal Reserve Bank of New York (the "FRBNY"). ¶¶ 2-7. Under the terms of the Consent Order and the Written Agreement, the Company is subject to strict supervision by the FDIC and the FRBNY, as well as stringent reporting requirements. *Id.*

# ARGUMENT

I. **THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 23.1 FOR FAILURE TO ADEQUATELY ALLEGE DEMAND FUTILITY**

### A.  The Demand Requirement

A shareholder derivative action is a lawsuit brought by one or more minority shareholders in order "'to enforce a *corporate* cause of action against officers, directors, and third parties.'"  *Kamen*, 500 U.S. at 95 (quoting *Ross v. Bernhard*, 396 U.S. 531, 534 (1970)) (emphasis in original).  "Although named a defendant," the corporation "is the real party in interest, the stockholder being at best the nominal plaintiff."  *Ross*, 396 U.S. at 538.  The claim, in fact, "belongs to the corporation."  *Grimes v. Donald*, 673 A.2d 1207, 1215 (Del. 1996).  Since the power to decide whether to sue on a corporation's behalf is typically vested in its board of directors, "a shareholder derivative action is an exception to the general rule."  *In re Textron*, 811 F. Supp. 2d 564, 572 (D.R.I. 2011).  It "permits an individual shareholder to usurp control of the corporation in order to bring suit on behalf of the corporation."  *Risberg ex rel. Aspen Tech., Inc. v. McArdle*, 529 F. Supp. 2d 213, 219 (D. Mass. 2008).

As the First Circuit has explained:

> [I]t is normally the directors, not the stockholders, who conduct the affairs of the company.  Hence, to be allowed, *sua sponte*, to place himself in charge without first affording the directors the opportunity to occupy their normal status, **a stockholder must show that his case is exceptional**.  His initial burden is to demonstrate why the directors are incapable of doing their duty.

*In re Kauffman Mut. Fund Actions*, 479 F.2d 257, 263 (1st Cir. 1973) (emphasis added).

Therefore, before bringing a derivative action, "a shareholder must demand that the corporation

take action, unless such a demand would be futile." *Bryceland v. Minogue*, 557 F. App'x 1, 3

(1st Cir. 2014); *see also Stone v. Ritter*, 911 A.2d 362, 366-67 (Del. 2006).[7]

Pursuant to the heightened pleading standards imposed by Rule 23.1, where — as here (¶

132) — Plaintiffs concede that they have not made the requisite demand, they "must plead

particularized factual allegations establishing that demand should be excused because it was

futile." *Montini v. Lawler*, 2014 WL 1271696, at *6 (D. Mass. Mar. 26, 2014); *see also*

*Gonzalez Turul*, 951 F.2d at 2 ("a shareholder must plead with particularity either that demand

was made on the corporation or that demand was futile").  "Mere conclusions or generally

pleaded allegations of the type that ordinarily will be sufficient under Fed. R. Civ. P. 8(a) will

not satisfy the particularity requirement." *Textron*, 811 F. Supp. 2d at 571; *see also, e.g.*, *Levine*

*v. Smith*, 591 A.2d 194, 207 (Del. 1991) (the particularity requirement for pleading demand

futility is "more onerous than that required to withstand" motions to dismiss in ordinary cases).

## B.      The *Rales* Test Governs The Demand Futility Analysis

Following Delaware precedent, the First Circuit has adopted the so-called *Rales* test for

determining demand futility in cases such as this action.  *See, e.g.*, *Bryceland*, 557 F. App'x, at

*7.  Under the *Rales* test, demand is only excused if there is "a reasonable doubt that, as of the

time the complaint is filed, the board of directors could have properly exercised its independent

and disinterested business judgment in responding to a demand." *Rales*, 634 A.2d at 933-34.[8]

---

[7]     The demand requirement also provides corporate boards with the opportunity to resolve potential dispute
without resorting to litigation.  *See, e.g.*, *Rales v. Blasband*, 634 A.2d 927, 935 (Del. Sup. 1993).  It provides a "form
of alternative dispute resolution" that requires the shareholder to "exhaust his intra-corporate remedies" first, rather
than seek "immediate recourse to litigation."  *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984).

[8]     The so-called *Aronson* test applies where an affirmative directorial decision or action is being challenged.  *See*
*Garcia v. Carrion*, 2010 WL 3662593, at *5 (D.P.R. Aug. 11, 2010) (applying *Aronson*).  Under *Aronson*,
"plaintiffs must provide particularized factual allegations that raise a reasonable doubt that (1) the directors are
disinterested and independent" or "(2) the challenged transaction was otherwise the product of valid exercise of
business judgment."  *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 120 (Del. Ch. 2009).  "Even if the
Court were to apply *Aronson*, however, the same reasoning that leads the Court to conclude that Plaintiffs have
failed to show interestedness would control the conclusion of business judgment rule analysis, since Plaintiffs' only

The *Rales* test applies in situations where an affirmative business decision of the current board of directors is **not** being challenged.  *See First Bancorp*, 465 F. Supp. 2d at 118 (citing *Rales*, 634 A.2d at 933-34).  That is the case here.  The crux of Plaintiffs' allegations is that the Individual Defendants failed to exercise sufficient oversight over the Company's activities — no specific decisions by the Board are at issue.  *See, e.g.*, ¶¶ 1, 134, 157; ¶ 134; *First Bancorp*, 465 F. Supp. 2d at 118-19 (*Rales* applies to oversight claims); *Guttman v. Huang*, 823 A.2d 492, 499-500 (Del. Ch. 2003) (same).

Although the Complaint also challenges the Individual Defendants' "approving" DFC's issuance of allegedly false financial statements (¶ 1), this assertion is properly construed as an extension of Plaintiffs' oversight claims — *i.e.*, the financial statements are alleged to have been inaccurate because the Board did not properly oversee the Company.  ¶ 8.  "As Plaintiff's claims amount to issues of oversight, management, and the issuance of alleged misstatements, they ultimately do not challenge specific business decisions and, thus, the *Rales* test is the proper standard with which to engage in a demand futility analysis."  *David Shaev Profit Sharing Account v. Riggio*, 2014 WL 3350235, at *5 (N.Y. Sup. Ct. July 3, 2014); *see Brautigam v. Blankfein*, 8 F. Supp. 3d 395, 404 (S.D.N.Y. 2014) ("Claims alleging that directors violated their fiduciary duties based on corporate misstatements are failure of oversight claims evaluated under *Rales*.").

---

basis for arguing that business judgment does not apply is the very same theory of bad faith action."  *In re SAIC Deriv. Litig.*, 948 F. Supp. 2d 366, 391 n.10 (S.D.N.Y. 2013); ¶¶ 144-46.

**C.    The Complaint Fails To Plead Particularized Facts Showing Interest Or A Lack Of Independence Under *Rales***

Demand futility is assessed against each director individually and must be shown against at least half of the board members.  *See, e.g.*, *In re Sonus Networks, Inc. S'holder Deriv. Litig.*, 499 F.3d 47, 67 (1st Cir. 2007) (citing *Rales*, 634 F.2d at 930); *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961, 977 n.48 (Del. Ch. 2003) ("A plaintiff must address each director individually and cannot rely on allegations made generally against the whole board or a group of directors.").  That means that Plaintiffs must allege **particularized** and **individualized** facts showing that at least three of the six Individual Defendants are either interested or lack independence.  As detailed further below, Plaintiffs have failed to do so.

1.    Plaintiffs Do Not Allege That A Majority Of The
Company's Board Is Interested

A director may be deemed interested for demand futility purposes where "divided loyalties are present, or where the director will receive a personal financial benefit from a transaction that is not equally shared by the stockholders, or when a corporate decision will have a materially detrimental impact on a director but not the corporation or its stockholders."  *Rales*, 634 A.2d at 936.   Plaintiffs do not allege that any of the Individual Defendants possessed a financial interest or other conflict of interest in the alleged misconduct.  Rather, Plaintiffs' **sole** basis for contending that the Individual Defendants suffer a disabling interest is the assertion that "[b]ecause of their participation in the mismanagement of the Company" "each of the Individual Defendants would have to sue himself and/or his fellow directors and allies in the top ranks of the Company and to expose each of them to a substantial risk of liability which each director of the Board would not do."  ¶ 135.

As a threshold matter, it is well-established that "the mere fact that directors would be asked to sue themselves is not a basis for excusing demand."  *First Bancorp*, 465 F. Supp. 2d

at 119 n.2) (citing *Kohls v. Duthie*, 791 A.2d 772, 779 (Del Ch. 2000)); *see also Aronson*, 473 A.2d at 818 (accepting such an allegation "would effectively abrogate Rule 23.1 and weaken the managerial power of directors"). It is equally axiomatic that "bare allegations of wrongful participation or acquiescence are not enough" to excuse demand. *Grossman v. Johnson*, 674 F.2d 115, 124 (1st Cir. 1982). Rather, there must be "a **substantial likelihood** of personal liability" against the directors. *Wood v. Baum*, 953 A.2d 136, 141 n.11 (Del. 2008) (emphasis added). Specifically:

> [D]emand will be excused based on a possibility of personal director liability only in the rare case when a plaintiff is able to show director conduct that is so egregious on its face that … a substantial likelihood of directly liability therefore exists.

*Citigroup*, 964 A.2d at 121; *see also Seminaris*, 662 A.2d at 1354 (same).

A claim for failure of director oversight — also known as a *Caremark* claim, after the seminal case in this context — "is one of, if not the most, difficult theories upon which to prevail." *First Bancorp*, 465 F. Supp. 2d at 119 (citing *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996)); *see also, e.g., In re China Auto. Sys. Inc. Deriv. Litig.*, 2013 WL 4672059, at *7 (Del. Ch. Aug. 30, 2013). "To impose oversight liability a plaintiff must show that the directors knew they were not discharging their fiduciary obligations or that the directors demonstrated a conscious disregard for their responsibilities." *Citigroup*, 964 A.2d at 125. That is, "a showing of bad faith is a **necessary condition** to oversight liability." *Id*. (emphasis in original).[9]

---

[9]   Moreover, under DFC's Certificate of Incorporation, its directors are exculpated from liability for any breaches of fiduciary duty, unless those breaches arise from bad faith conduct. *See* Ex. 4, DFC Certificate of Incorporation; Puerto Rico General Corporations Act Sec. 1.02.B.6; *Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000) (court may properly consider exculpatory clauses in a corporation's articles of incorporation on a motion to dismiss); *In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. 1995) (in presence of an exculpation clause, "the risk of liability does not disable [the board] from considering a demand fairly unless particularized pleading permits the court to conclude that there is a substantial likelihood that their conduct falls outside the exemption").

Thus, oversight liability can **only** attach if "the directors utterly failed to implement any reporting or information system or controls, or having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Stone*, 911 A.2d at 370.   In order to demonstrate a substantial threat of liability under these principles, a plaintiff typically must concretely plead facts indicating that "the company entirely lacked an audit committee or other important supervisory structures" (*South v. Baker*, 62 A.3d 1, 16 (Del. Ch. 2012)), or that "the company had an audit committee that met only sporadically and devoted patently inadequate time to its work, or that the audit committee had clear notice of serious accounting irregularities and simply chose to ignore them, or even worse, to encourage their continuation." *First Bancorp*, 465 F. Supp. 2d at 119 (quoting *Guttman*, 823 A.2d at 507).

Far from claiming that the Company did not have internal reporting systems in place, the Complaint explicitly acknowledges that DFC had extensive reporting systems in effect.  ¶ 114 ("the risk policy committee is responsible for assisting the Board of Directors in fulfilling its oversight of the strategies, policies, procedures and systems established by the Company's management"); ¶¶ 125-29 (describing oversight function and procedures of the Company's Audit Committee).[10]  Rather, Plaintiffs appear to assert that the Individual Defendants "must have known" about flaws in DFC's oversight function and chose, in bad faith, to ignore them. However, the Complaint is entirely lacking in the type of particularized allegations necessary to make out a *Caremark* claim.  *See id.*; *Caviness v. Evans*, 229 F.R.D. 354, 360 (D. Mass. 2005);

---

[10]    *See also Stone*, 911 A.2d at 370-71 (no demand futility where reasonable reporting system existed); *David Shaev*, 2014 WL 3350235, at *7 (no demand futility where "Plaintiff's allegations, in fact, speak to the presence of adequate monitoring systems").

*Montini*, 2014 WL 1271696, at \*9; *China Auto. Sys.*, 2013 WL 4672059, at \*8-9.  Instead, Plaintiffs resort to a series of vague conclusions that have repeatedly been rejected by the courts.

a.     *Whistleblower Complaint.*

Plaintiffs' invocation of allegations made by a former employee of the Company (Ronald Stewart) in another complaint asserting claims under the whistleblower protection provisions of the Sarbanes Oxley Act of 2002 (¶¶ 51-58) is misguided.  Unproven allegations in another complaint are not particularized factual allegations.  *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 894 (2d Cir. 1976) (holding that, absent adjudication on the merits, prior legal proceedings have no evidentiary bearing in future proceedings).  Indeed, "[p]aragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial."  *RSM Prod. Corp. v. Friedman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009).  Furthermore, these allegations only relate at most to Mr. Wakeman; they have no bearing on the disinterestedness of the Outside Directors.  *See, e.g.*, *David Shaev*, 2014 WL 3350235, at \*7 ("Despite Plaintiff's identification of a confidential whistleblower who potentially was aware of control issues endemic to the Company, Plaintiff is unable to allege particularized facts clearly demonstrating that any individual member of the Board actively knew of these purported deficiencies, consciously failed to put forth any control systems, or knowingly refused to monitor those systems already in existence.").

>    b.    *Confidential Witness Allegations.*

Plaintiffs' reliance on three purported confidential witnesses, referred to as CWs 1 to 3

(¶¶ 72-86, 89-97), is similarly misplaced.  As with the *Stewart* allegations, the CW allegations

appear to be largely copied from another complaint — in this instance, from the pending

complaint in the Securities Action.  *Compare* ¶¶ 76-83, 85-86 *with* Sec. Compl. ¶¶ 84, 88-89, 94-

101.  That does not qualify as particularized factual pleading.  *See supra* Sec. I.C.1.a; *In Re:

Corinthian Colleges, Inc. S'holder Deriv. Litig.*, 2012 U.S. Dist. LEXIS 188623, at *17 (C.D.

Cal. Jan. 30, 2012) (finding improper derivative plaintiff's attempt to rely on confidential witness

allegations asserted in related securities action because "doing so does not comport with Federal

Rule of Civil Procedure 11(b)'s requirement that an attorney 'personally . . . validate the truth

and legal reasonableness of the papers filed' and 'conduct a reasonable factual investigation'");

*VNB Realty, Inc. v. Bank of Am. Corp.*, 2013 WL 5179197, at *4, *7 (S.D.N.Y. Sept. 16, 2013)

(same).

Furthermore, the CW allegations are far too vague and conclusory to excuse demand:

"[w]here, as here, the pleading rules require even more, *i.e.*, particularized facts, these witness

statements are too vague and general to be sufficient.  Demand excuse requires particularized

facts, not stray inferences."  *MIPS Techs., Inc. Deriv. Litig.*, 2008 U.S. Dist. LEXIS 108486, at

*20 (N.D. Cal. Aug. 12, 2008).  For example:

- **None** of the CWs claims to have any contact with any of the Individual Defendants.  Therefore, they are unable to speak to what the Individual Defendants knew or did not know.

- Indeed, the only Individual Defendants even **mentioned** by the CWs are Messrs. Wakeman and Buchert, and that is simply to state that CW2 "would have expected that Buchert would question" issues relating to ALLL because of his financial expertise (¶ 86), and that CW1 thought changes to the ALLL model were reviewed by Mr. Wakeman.  ¶ 79.  Neither of those allegations is indicative of wrongdoing.  CW2's opinions about what Mr. Buchert "should" have

done are of no import: what matters is what Mr. Buchert actually knew, a question which CW2 sheds no light on. *See infra* at 16. Similarly, the fact that Mr. Wakeman, DFC's CEO, reviewed the ALLL model is hardly surprising. Again, the relevant questions are what those changes were, whether they were accurate, and whether Mr. Wakeman knew the changes were not. Again, CW1 provides no facts addressing any of these questions.

- The fact that the CWs may have disagreed with management decisions or believed their own opinions were more correct (¶¶ 76, 80, 89, 92, 93, 97) does not demonstrate wrongdoing — particularly with respect to the non-management Outside Directors.[11] *See infra* at 18.

"In sum, Plaintiffs' attempt to interject the allegations from the [Securities Action] to save the inadequate allegations here is improper, and even if it were proper, those allegations are insufficient to support an inference that the [Individual] Defendants had knowledge of the alleged improper practices." *Corinthian Colleges*, 2012 U.S. Dist. LEXIS 188623, at *20.

### c.   Board Responsibilities.

Plaintiffs' assertion that the Individual Defendants were "required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial and operational affairs of Doral" (¶ 119) has no probative value. This is nothing more than a generalized — and impermissible — allegation that the Board members "were responsible for preventing fraud and failed to do so," which is clearly insufficient to excuse demand. *Montini*, 2014 WL 1271696, at *9; *see also, e.g.*, *China Auto. Sys.*, 2013 WL 4672059, at *8 (conclusory allegations that directors "knew" of, or "had the power to influence," alleged misconduct insufficient); *Stiegele ex rel Viisage Tech., Inc. v. Bailey*, 2007 WL 4197496, at *10 (D. Mass. Aug. 23, 2006) (same).

---

[11]   The inadequacy of the CW allegations is more fully discussed in DFC's motion to dismiss the Securities Action, which is attached hereto as Ex. 5.

d.       *Audit Committee Membership.*

Nor can Plaintiffs plead demand futility simply by alleging membership in the Audit Committee, which was "responsible for the review … [of] issues regarding accounting principles and financial statement presentations … and major issues as to the adequacy of the Corporation's internal controls and any special audit steps."  ¶ 141.  Courts have uniformly held that generalized allegations that members of an audit committee "should have known" or "must have known" of allegedly improper accounting and supervisory practices by virtue of their position do not excuse demand.  *See, e.g.*, *In re Coca-Cola Enters., Inc. Deriv. Litig.*, 478 F. Supp. 2d 1369, 1378 (N.D. Ga. 2007) ("Courts applying Delaware case law have consistently held, however, that a director is not interested merely by virtue of sitting on an Audit Committee while the corporation faces accounting and audit irregularities."); *South*, 62 A.3d at 17 (allegation that the "underlying cause of a corporate trauma falls within the delegated authority of a board committee does not support an inference that the directors on that committee knew of and consciously disregarded the problem").

"Just being a director on the committee where the alleged wrongdoing is within its delegated authority does not give rise to a substantial threat of personal liability under *Caremark* without supporting allegations of particularized facts showing bad faith."  *China Auto. Sys.*, 2013 WL 4672059, at *8; *see also Caviness*, 229 F.R.D. at 361 (plaintiff must show that the "Audit Committee had clear notice of the accounting improprieties"); *First Bancorp*, 465 F. Supp. 2d at 120 (demand not excused where "plaintiffs failed to plead with particularity the actions and practices of the audit committee, including whether the committee discussed and approved any of the allegedly improper accounting practices").  As discussed above, the Complaint is completely lacking any such factually supported allegations of bad faith.  ¶¶ 125-29.

Plaintiffs' assertions regarding Mr. Buchert's status as the Audit Committee's "designated financial expert" (¶ 140) are equally unavailing. "Directors with special expertise are not held to a higher standard of care in the oversight context simply because of their status as an expert." *Citigroup*, 964 A.2d at 128 n.63. Rather, Plaintiffs retain their obligation to plead specific facts showing that Mr. Buchert *knew* of accounting or controls irregularities and willfully ignored them. *See id.* They have not met that obligation.

### e.    Doral Bank Board Membership.

The assertion that four of the Individual Defendants have positions on Doral Bank's board of directors (¶ 142) adds nothing to the analysis. It is simply a variation on the insufficient argument that directors must have known of the alleged accounting and controls problems by virtue of their positions. *See supra* at 11-12; *First Bancorp*, 465 F. Supp. 2d at 121 ("Alleging that the individual defendants knew or should have known of the accounting irregularities because of their positions lacks the particularity required to excuse demand").

### f.    Written Agreement/Consent Order.

Likewise, the existence of the Written Agreement and the Consent Order (¶¶ 134, 143) does not indicate bad faith. To the contrary, Plaintiffs' pleading of the steps taken by the Board to implement the requirements of the Consent Order and the Written Agreement demonstrates that the Company was attempting to comply with those directives. *See, e.g.*, ¶ 115; *Saginaw Police & Fire Pension Fund v. Hewlett-Packard Co.*, 2012 WL 967063, at *7 (N.D. Cal. Mar. 21, 2012) ("the retention of a consultant … suggests that the Board chose to take action regarding the DOJ's claims, rather than failing to act on them"). Perhaps its efforts were not entirely successful but that does not show bad faith: there is a "vast difference between an inadequate or flawed effort to carry out fiduciary duties and a conscious disregard of those duties." *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 244 (Del. 2009).

16

Rather, Plaintiffs must plead specific facts — which they have not — showing that each of the Individual Defendants **knew** that the Company was (allegedly) not complying with the Written Agreement and the Consent Order.  *See, e.g.*, *Marvin H. Maurras Revocable Trust v. Bronfman*, 2013 WL 5348357, at *7 (N.D. Ill. Sept. 24, 2013) ("Again, the key question for purposes of this motion is not whether Accretive was causing Fairview to violate its agreement with the Minnesota Attorney General — Plaintiffs have adequately alleged that it was — but how much Defendants knew about the gravity of the situation.").

> g.    *Issuance of Allegedly False Financial Statements.*

As noted, Plaintiffs also assert that the Individual Defendants improperly permitted the Company to issue "false and misleading financial reports and financial statements filed with the SEC that violated Generally Accepted Accounting Principles."  ¶ 1; *see also* ¶ 16.  Plaintiffs do not proffer any particularized facts indicating that any of the Individual Defendants face the necessary "substantial" threat of liability due to the Company's issuance of the challenged financial statements.  *See supra* at 10-11, 15; *Seminaris*, 662 A.2d at 1354.  "To clear the particularized pleading hurdle, Plaintiff[s] would need to provide more detailed allegations concerning what the directors could have known when they approved the statements alleged to be misrepresentations."  *Id.*

Plaintiffs do not do so:

> Although the [P]laintiff[] allege[s] that [the Individual Defendants] had reason to know that the company's financial statements were misstated, the allegation is wholly conclusory.  Entirely absent from the complaint are well-pled, particularized allegations of fact detailing the precise roles these directors played at the company, the information that would have come to their attention in those roles, and any indication as to why they would have perceived the accounting irregularities.

*Guttman*, 823 A.2d at 503 (citation omitted); *see also In re Dow Chem. Co. Derivative Litig.*,

2010 WL 66769, at *10 (Del. Ch. Jan. 11, 2010) ("Though the complaint does identify specific disclosures alleged to be misleading, plaintiffs do not allege specific facts that reasonably suggest sufficient board involvement in the preparation of the disclosures, nor does the complaint sufficiently allege that the director defendants had knowledge that any disclosures or omissions were false or misleading or that the director defendants acted in bad faith in not adequately informing themselves.").

This deficiency is particularly acute with respect to the five Outside Directors (Messrs. Buchert, Gilleran, Jacobs, King and Smith) — "to impute to the outside directors especially the knowledge that the approved statements were false, this Court would need other factual allegations connecting the outside directors to the day-to-day workings of the corporation so that a reasonable inference could be made that they knew the true state of affairs." *Ji v. Van Heyningen*, 2006 WL 2521440, at *9 (D.R.I. Aug. 29, 2006). Plaintiffs provide no such allegations here. The simple fact that three of the Outside Directors are members of DFC's Audit Committee is immaterial. "Without a better sense of what actually happened, and who knew what when, Plaintiffs' allegations that the Audit Committee knowingly disseminated false information and thereby breached its fiduciary duty fails to satisfy the particularized pleading standard." *Ji*, 2006 WL 2521440, at *9; *see also supra* at 15-16.[12]

---

[12]  Plaintiffs' conclusory and undifferentiated assertions that the defendants "engaged in a conspiracy" to "breach their respective duties" (¶¶ 148-53) have no import. *See Loveman v. Lauder*, 484 F. Supp. 2d 259, 264 n.24 (S.D.N.Y. 2007) ("In view of the requirement of particularized allegations to excuse a failure to make a demand, the conclusory allegation of conspiracy properly may be disregarded."); *Greenfield v. Tele–Commc'ns*, 1989 WL 48738, *3 (Del. Ch. May 10, 1989); ("Even in an era of notice pleading, conclusory allegations of conspiracy have regularly been rejected") (internal citation omitted).

2.      Plaintiffs Do Not Allege That A Majority Of The
Company's Board Lacks Independence

A director is deemed independent if his or her 'decision is based on the corporate merits

before the board rather than extraneous considerations.'" *First Bancorp*, 465 F. Supp. 2d at 121

(quoting *Aronson*, 473 A.2d at 816).   Plaintiffs do not seriously challenge the Individual

Defendants' independence.  Instead, Plaintiffs cursorily assert that the Individual Defendants, as

a group, are not independent because they "received payments, benefits, stock options, and other

emoluments by virtue of their membership on the Board and their control of Doral."  ¶ 137.

Such boilerplate allegations of director compensation have been uniformly rejected.  *See, e.g.*, *In*

*re The Ltd. Inc. S'holder Litig.*, 2002 WL 537692, at *4 (Del. Ch. Mar. 27, 2002) ("Allegations

as to one's position as a director and the receipt of director's fees, without more…are not enough

for purposes of pleading demand futility."); *Bryceland v. Minogue*, 2013 WL 3208613, at *5 (D.

Mass. June 21, 2013), *aff'd*, 557 F. App'x 1 (1st Cir. 2014) ("the compensation of directors,

without more, does not suggest a lack of independence"); *First Bancorp*, 465 F. Supp. 2d at 123

(same).

Furthermore, Plaintiffs' allegations regarding director compensation are leveled against

the Individual Defendants as a group, with no specific allegations asserted against any of the

Outside Directors (such as the amount of the payments or the nature of the benefits received by

any individual Outside Director).  ¶ 149.  This too defeats any showing of a lack of independence

against the Outside Directors.  *See, e.g.*, *Beam*, 833 A.2d at 977 n. 48.  Plaintiffs' only specific

allegation regarding director compensation is that Mr. Wakeman received substantial total

compensation from the Company.  *See* ¶ 73.  The fact that Mr. Wakeman is paid for his services

as the President, CEO, and a director of the Company clearly does not establish a lack of

independence.  *See, e.g.*, *Caviness*, 229 F.R.D. at 361; *In re Sagent Tech., Inc., Deriv. Litig.*, 278

F. Supp. 2d 1079, 1089 (N.D. Cal. 2003) (noting that if such "allegations were sufficient to show lack of independence, every inside director would be disabled from considering a pre-suit demand"). The assertion that Mr. Wakeman, by virtue of his management position, is not considered independent under New York Stock Exchange rules (¶ 139) is equally irrelevant: "[i]nside directors, while not viewed as independent under NYSE or SEC rules, may still be independent when conducting a demand futility assessment under *Rales*." *David Shaev*, 2014 WL 3350235, at *9.

*    *    *

"This circuit vigorously enforces [the demand] requirement and will dismiss derivative actions when plaintiffs do not comply." *Gonzalez Turul*, 951 F.2d at 2 (internal citations omitted); *see also Efron v. Embassy Suites (Puerto Rico), Inc.*, 47 F. Supp. 2d 200, 209 (D.P.R. 1999) ("the pleading of a demand or its futility [is] a strict requirement warranting dismissal when plaintiffs do not comply"), *aff'd*, 223 F.3d 12 (1st Cir. 2000). Thus, Plaintiffs' failure to factually allege demand futility requires dismissal of the Complaint with prejudice.

## II.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

The Complaint should also be dismissed for failure to state a claim under Rule 12(b)(6). *See, e.g.*, *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 771 (1st Cir. 2011) ("complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face; naked assertions devoid of further factual enhancement need not be accepted; and if the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal.").

### A.      Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty

As discussed above (*supra* Sec. I.B.), in order to properly plead a claim for breach of fiduciary duty based on an alleged failure of oversight, a plaintiff must allege either a complete lack of internal control systems or a conscious refusal to abide by such systems.  *See, e.g.*, *Stone*, 911 A.2d at 370.  The Complaint does not contain any such allegations.  Rather, it concedes that the Company **had** accounting and financial reporting mechanisms and controls in place and does not allege any facts — as opposed to bare conclusions — indicating that the Individual Defendants consciously failed to implement or oversee the functioning of these mechanisms. *See supra* at 11-12, 13-18.

To the extent Plaintiffs assert that the Individual Defendants breached their fiduciary duties by knowingly "causing, approving, and/or acquiescing" in the Company's "issuance of false and misleading financial reports and financial statements" (¶ 1), these allegations sound in fraud and are subject to the heightened pleading requirements of Rule 9(b).  *See, e.g.*, *Hallal v. Vicis Capital Master Fund Ltd.*, 2013 WL 1192384, at \*14-15 (D. Mass. Feb. 25, 2013); *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009) (Rule 9(b) "requires not only specifying the false statements and by whom they were made but also identifying the basis for inferring scienter").  As detailed above, Plaintiffs do not allege **any** concrete facts indicating that any of the Individual Defendants were aware that DFC's SEC filings and financial statements were misleading at the time they were issued.  *See supra* at 17-18.  This failure requires dismissal.  *See Cardinale*, 567 F.3d at 15 (courts have "uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint also sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading).

Similarly, the Complaint is devoid of specific facts showing that each of the Individual Defendants knew that DFC was (allegedly) not complying with the Written Agreement and the Consent Order. *See supra* at 16-17; *Marvin H. Maurras Revocable Trust*, 2013 WL 5348357, at *7.

### B.   There Is No Independent Cause of Action for Gross Mismanagement

Given that the Individual Defendants are immunized from monetary liability for any breaches of fiduciary duty short of deliberate bad faith conduct (*supra* at 10 n. 9), Plaintiffs' claim for negligent mismanagement is untenable.   *See, e.g.*, *Malpiede v. Townson*, 780 A.2d 1075, 1093, 1096 n.77 (Del. 2001) ("where the factual basis for a claim solely implicates a violation of the duty of care, this court has indicated that the protections of [an exculpatory provision in a corporate charter] may be properly invoked and applied").  In any event, there is no "independent cause of action against corporate directors and officers for reckless and gross mismanagement; such claims are treated as claims for breach of fiduciary duty." *Citigroup*, 964 A.2d at 115 n.6; *see also Garcia*, 2010 WL 3662593, at *8 ("gross mismanagement is not cognizable as a simultaneous independent cause of action").  Because Plaintiffs' breach of fiduciary duty claim fails (*see supra* at 21-22), Plaintiffs' gross mismanagement claim should also be dismissed. *See Citigroup*, 964 A.2d at 115 n.6.

### C.   Plaintiffs Fail To State A Claim For Contribution

Plaintiffs' contribution claim should be dismissed for at least two independent reasons. Where, as here, Plaintiffs' contribution claim is based solely on the **possibility** that the Company **may**, at some future point in time, be found liable in the Securities Action **and** bear a disproportionate share of liability, it is far too speculative to be considered ripe for adjudication. *See, e.g.*, *Pall*, 2006 WL 2800064, at *3 ("courts regularly dismiss contribution claims which are based on findings of liability and damages in a separate legal action … because there has been no

determination of liability and damages in the related actions, the injury remains speculative."); *United States v. One Rural Lot Identified as FINCA No. 5991 Located in Barrio Pueblo, Puerto Rico*, 726 F. Supp. 2d 61, 76 (D.P.R. 2010) ("adjudication is premature if the court must delve into abstract disputes over matters that may never arise").

Furthermore, Plaintiffs cannot assert a contribution claim against any of the Outside Directors. None of the Outside Directors are defendants in the Securities Action, and the Complaint does not allege that any of the Outside Directors violated the federal securities laws. *See* Sec. Compl. ¶¶ 21-26; ¶¶ 168-72.[13] However, it is axiomatic that "there can be no claim for contribution where there is no claim or adequate allegation that the third-party defendant himself violated the federal securities law." *Monisoff v. Am. Eagle Invests., Inc.*, 955 F. Supp. 40, 41 (S.D.N.Y. 1997); *see also Fromer v. Yogel*, 50 F. Supp. 2d 227, 234 (S.D.N.Y. 1999) ("What is required…is that the Complaint allege that the parties—the Plaintiff and those Defendants from whom contribution is sought—committed a tort, in this case securities fraud."). This mandates dismissal of Plaintiffs' contribution claim.[14]

## III.   IN THE ALTERNATIVE, THIS ACTION SHOULD BE STAYED PENDING RESOLUTION OF THE SECURITIES ACTION

Alternatively, if the Court decides not to dismiss the Complaint, this action should be stayed pending the resolution of the Securities Action. *See, e.g.*, *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"); *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004) ("It is apodictic that federal courts possess the inherent power to stay

---

[13]   Mr. Wakeman is the only Individual Defendant who is also a defendant in the Securities Action.

[14]   As noted, if the contribution claim is dismissed, there is likely no basis for subject-matter jurisdiction in this Court. *See, e.g.*, *Pall*, 2006 WL 2800064, at *3; *Diaz*, 2010 WL 4118075, at *4-7.

proceedings for prudential reasons.").  Courts faced with similar circumstances have routinely stayed derivative proceedings in favor of related securities actions, based on practical considerations, including "(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party." *In re Groupon Deriv. Litig.*, 882 F. Supp. 2d 1043, 1045 (N.D. Ill. 2012); *see also, e.g.*, *Brenner v. Albrecht*, 2012 WL 252286, at *4 (Del. Ch. Jan. 27, 2012).  Such considerations clearly support a stay of this action.

*First*, there is no dispute that this action and the Securities Action "rest on the same or closely related transactions, happenings or events, and thus will call for the determination of the same of substantially related questions of fact."  *Cucci v. Edwards*, 2007 WL 3396234, at *2 (C.D. Cal. Oct. 31, 2007).  Plaintiffs have acknowledged as much.  *See* Dkt. No. 38 at 1 ("the parties agree that this Action … and the related securities class action … arise from similar transactions and occurrences and are related to the extent that they are based upon the same factual circumstances").  Indeed, the alleged misconduct asserted in the Complaint — the issuance of SEC filings and financial statements that allegedly misrepresented the Company's internal controls, loss reserves and capital thresholds, the alleged failure to comply with the Written Agreement and the Consent Order, and the Board's alleged disregard of deficiencies in DFC's internal controls — is identical to the conduct challenged in the Securities Action. *Compare* ¶¶ 98-108 *with* Sec. Compl. ¶¶ 141-268.  In fact, **entire passages of the Complaint are a verbatim copy of the Securities Complaint**, and the Complaint relies on the same supposedly confidential witnesses cited in the Securities Complaint.  *Compare* ¶¶ 32; 33-36; 37-50; 53-54; 73-75; 76; 88; 91 *with* Sec. Compl. ¶¶ 4; 57-60; 43-56; 34-37; 83; 97; 121, 125; 132.

"Given the duplicative nature of the facts at issue, staying the present case in favor of the [Securities Action] would preserve judicial resources and reduce the litigation burden on the parties and the court." *Groupon*, 882 F. Supp. 2d at 1051; *see also In re First Solar Deriv. Litig.*, 2012 WL 6570914, at *2 (D. Ariz. Dec. 17, 2012) (staying derivative action in interest of "saving litigation costs and court resources in the long term" where the factual bases and underlying issues are similar to securities action); *In re Ormat Techs., Inc. Deriv. Litig.,* 2011 WL 3841089, at *4 (D. Nev. Aug. 29, 2011) (staying derivative action in interest of preserving judicial resources because "claims and parties in the two lawsuits substantially overlap").[15]

That is especially true here, where the relief sought by Plaintiffs is dependent on the outcome of the Securities Action. As noted, Plaintiffs' third cause of action is a federal securities law claim for contribution that seeks to have the Individual Defendants indemnify DFC for any liability incurred in the Securities Action. ¶¶ 168-72; *supra* at 3, 5. That claim cannot be adjudicated until there is a final determination on the merits of the claims asserted in the Securities Action — *i.e.*, a decision as whether the Company is subject to any liability in the Securities Action. As the Delaware Chancery Court has noted:

> Because the derivative claims cannot be adjudicated in full (or even in large measure) until the Securities Class Action is tried, the sensible ordering of events is for the Securities Class Action to proceed first … even though the relief [Plaintiffs] seek[] is only partially contingent on the outcome of the Securities Class Action, it is difficult to fault the idea that the primary liability case (*i.e.*, the Securities Class Action) should go forward before the case seeking indemnity, when the indemnity case's outcome necessarily depends on the outcome of the Securities Class Action.

*Brenner*, 2012 WL 252286, at *6 (citations omitted).

---

[15]   The fact that there is not a perfect identity between the Individual Defendants here and the individuals named in the Securities Action is immaterial, as is the difference in the terminology of the causes of action. What matters is the substantive and factual overlap between the Securities Action and this case. *See, e.g.*, *Ormat*, 2011 WL 3841089, at *5.

In recognition of that fact, courts have repeatedly granted stays in similar circumstances. *See, e.g.*, *id.*; *Brudno v. Wise*, 2003 WL 1874750, at *5 (Del. Ch. Apr. 1, 2003) ("Given that the overwhelming thrust of the Delaware Action complaint is a demand for indemnification largely for harm to be incurred by El Paso in the Federal Securities Action, the sensible ordering of events is for the Federal Securities Action to proceed first."); *Rosenblum v. Sharer*, 2008 U.S. Dist. LEXIS 65353, at *25 (C.D. Cal. July 28, 2008) ("the suit should be stayed because the shareholders' claims necessarily depend on the outcome of the securities class action. If Amgen is exonerated in the securities class action, then it is unclear what, if anything, would be left of the derivative action.").

**Second**, but importantly, DFC, "the company on whose behalf plaintiff brings this derivative action would clearly be put at a disadvantage if had to defend the [S]ecurities [A]ction and nominally prosecute this derivative action at the same time." *In re HQ Sustainable Mar. Indus., Inc., Deriv. Litig.*, 826 F. Supp. 2d 1256, 1263 (W.D. Wash. 2011). As discussed above, Plaintiffs' allegations mirror the allegations in the Securities Action. However, Plaintiffs' arguments are made on behalf of the Company, while the claims in the Securities Action are asserted against the Company.

Therefore, the prosecution of this action would conflict with DFC's defense of the Securities Action because Plaintiffs — acting on DFC's behalf — would have to prove allegations that would seriously undermine DFC's defense of the Securities Action. That is neither practical nor in the Company's best interests. Courts have repeatedly held that such a conflict of interests "is a sufficient reason to stay a derivative action." *First Solar*, 2012 WL 6570914, at *2 ("Defendant will face the practical difficulty of pursuing potentially divergent strategies if the two actions are litigated simultaneously") (collecting cases); *see also*

*Ormat*, 2011 WL 3841089, at *4 ("Prosecution of this action will conflict with Ormat's defense of the pending class action"); *Groupon*, 882 F. Supp. 2d at 1052 (same).  The same holds true here.

"Proceeding with the present action will also divert the Company's financial and management resources from the pending" Securities Action.  *Groupon*, 882 F. Supp. 2d at 1052.  Such a diversion is completely unnecessary.  Given the similarities between this action and the Securities Action, it is very likely that the resolution of the Securities Action could lead to a prompt resolution of this action without continuing this conflict and without any of the parties or the Court having to expend resources in duplicative litigation.  *See, e.g.*, *First Solar*, 2012 WL 6570914, at *2.

*Third*, a stay would not prejudice Plaintiffs in any material manner.  There can be no recovery for contribution or indemnification (the primary monetary recovery sought by Plaintiffs) until the Securities Action is resolved.  In any event, the recovery sought by Plaintiffs would be for the **Company's** benefit — Plaintiffs would not be awarded any damages.  *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004) ("Because a derivative suit is being brought on behalf of the corporation, the recovery, if any, must go to the corporation.").  Likewise, a stay would not disadvantage Plaintiffs' ability to take discovery:

> Regarding the discovery process, the same practical consideration of overlapping allegations that renders simultaneous prosecution of both cases unduly complicated, inefficient, and unnecessary also mitigates the risk of delaying discovery here.  Because the two actions are somewhat related, the Securities Class Action plaintiffs have a strong incentive to develop evidence that will be useful to the plaintiffs in [both actions.]

*Brenner*, 2012 WL 252286, at *7; *see also Ormat*, 2011 WL 3841089, at *5 (same).

Thus, "the benefits of a stay pending the outcome of the securities litigation significantly outweigh any hardship to plaintiff[s]."  *In re HQ*, 826 F. Supp. 2d at 1263; *see also Ormat*, 2011

WL 3841089, at *5 ("any potential harm from delayed litigation is more than outweighed by the harm of denying the stay and forcing [Defendant] to expend resources on this derivative suit, and the harm to [Defendant] of having its witnesses for the Securities Class action undermined in this action").

**CONCLUSION**

For the foregoing reasons, the Court should dismiss this action in its entirety, with prejudice, for (i) failure to plead demand futility pursuant to Rule 23.1, and (ii) failure to state a cause of action under Rules 9(b) and 12(b)(6).  In the alternative, the Court should stay this action pending resolution of the Securities Action.

**RESPECTFULLY SUBMITTED**,

In San Juan, Puerto Rico, this 6th day of February, 2015.

**WE HEREBY CERTIFY** that on this same date we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

> *s/ José A. Acosta-Grubb*
> José A. Acosta-Grubb
> USDC-PR No. 119509
> E-mail:  jacosta@fgrlaw.com
>
> *s/ José Luis Ramírez-Coll*
> José Luis Ramírez-Coll
> USDC-PR No. 221702
> E-mail:  jramirez@fgrlaw.com
>
>
> FIDDLER GONZÁLEZ &
> RODRÍGUEZ, P.S.C.
> P.O. Box 363507
> San Juan, Puerto Rico 00936-3507
> Tel: (787) 759-3229
> Fax: (787) 250-7545

*s/ Kevin C. Logue*
Kevin C. Logue
*s/ Shahzeb Lari*
Shahzeb Lari
*s/ Kevin P. Broughel*
Kevin P. Broughel

PAUL HASTINGS LLP
75 East 55th Street
New York, NY 10022
Tel: (212) 318-6000
Fax: (212) 230-7807
E-mail: kevinlogue@paulhastings.com

*Attorneys for Defendants*

LEGAL_US_W # 80563820

29